## KELLY, Sheriff &c., *vs.* CRAPO and others.

It is now the settled law of this state that a prior assignment in bankruptcy, or under insolvent proceedings, in a foreign nation, or in another state of this union, will not be permitted to prevail against a subsequent attachment of the bankrupt's or insolvent's effects by a creditor residing here.

Such an assignment will be regarded by the courts of this state as operating to transfer all the property of the bankrupt or insolvent situated, at the time of the assignment, within the territory, or being under the dominion, of the nation or state where the proceedings were instituted.

But such an assignment will not transfer to assignees appointed in insolvent proceedings instituted in another state of this union, the title to a vessel registered there, and on the high seas, at the time, as against a subsequent attachment sued out by a creditor residing here. SUTHERLAND, J. dissented.

That comity which should exist and be liberally practiced between all civilized nations, and more especially between sister states, forbids that our courts should go any further than they have already gone, in giving a preference to the claims of creditors of the bankrupt or insolvent, who are citizens of this state, in respect to property actually here.

The preference should not be extended in respect to property not within our jurisdiction at the time of the assignment, merely because it was not actually within the territorial limits of the other state, although virtually under the dominion of her laws as property.

THIS action was brought upon a bond given pursuant to 2 R. S. 1st ed., p. 5, § 14, for the purpose of procuring the discharge from an attachment of an undivided half of a certain ship or vessel called the *Arctic.* Under insolvent proceedings instituted in the state of Massachusetts, Gibbs, Jenney & Allen were declared insolvent, and the defendants were duly appointed assignees. The insolvents made an assignment to them, of all their property, among which was the vessel in question, which was on the high seas at the time, and of which they owned one half. The vessel subsequently coming to New York was seized by the plaintiff on the 30th of April, 1861, under an attachment issued against Gibbs, Jenney & Allen, as non-residents, at the suit of Mott Robinson, a creditor residing here. The defendants, claiming to hold the vessel under and by virtue of the assignment, made application, as provided by the revised statutes in such cases,

for an appraisement of its value. It was accordingly appraised at $3000, and the vessel was released from custody, and delivered to the claimants, upon their executing to the sheriff, with the defendants Williams and Minturn, as sureties, the bond required by the statute, conditioned that in a suit to be brought on said bond, the claimants would establish that they were the owners of the share of the vessel attached, at the time of its seizure ; and in case of their failure to do so, that they would pay to the sheriff the amount of the valuation, with interest from the date of the bond.    The attachment was never set aside or discharged, and Robinson, the attaching creditor, proceeded in the original action, and recovered judgment for the whole amount claimed, against Gibbs, Jenney & Allen, upon which execution was issued, which remains in the hands of the plaintiff, wholly unsatisfied.

Both sides having rested, a verdict was taken for the plaintiff by consent, for the amount of the bond and interest, subject to the opinion of the court at general term.    The plaintiff accordingly made a case, upon which he moved for judgment on said verdict.

*Joseph H. Choate*, for the plaintiff.

*C. C. Langdell*, for the defendants.

CLERKE, J.    There seems to be no dispute as to the facts, and very little as to the law of this case.

The defendants claim the property attached, as assignees duly appointed in insolvent proceedings in Massachusetts, in which Gibbs, Jenney & Allen were declared insolvent, and that these latter, at the time of taking the proceedings, were the owners of the property attached.    The vessel belonged to the port of Fairhaven, in Massachusetts, and was there registered, as to one-half in their hands, being the interest attached here.    The claim of the defendants was founded exclusively on two assignments, dated respectively 12th Feb-

---

Kelly *v.* Crapo.

---

ruary and 6th March, 1861, under the insolvent proceedings; and no assignment was voluntarily made to them by the insolvents themselves. The vessel (called the Arctic) was an American ship, and daily registered as such in the said port, and at the several dates when the assignments were executed, and when they took effect, she was on the high seas prosecuting a voyage from Baker's and Howland's islands in the Pacific ocean to the port of New York, where she arrived on the 30th of April, 1861, on which day she was attached by the plaintiff as sheriff. It is not, I believe, disputed, that it is now the settled law of this state, that a prior assignment in bankruptcy, or under insolvent proceedings, in a foreign nation, or in another state of this union, will not be permitted to prevail against a subsequent attachment by a creditor of the bankrupt's or insolvent's effects residing here. Neither is it disputed that such an assignment will be regarded by the courts of this state as operating to transfer all the property of the bankrupt or insolvent, situated, at the time of the assignment, within the territory, or being under the dominion of the nation or state, where the proceedings were instituted; for instance, if the proceedings under which the assignments in question were conducted had been instituted in the united kingdom of Great Britain and Ireland, and the vessel was a registered ship of that nation, the assignment would have transferred her to the assignees, although she was, as in the present case, on the high seas at the time.

But, it is maintained by the counsel of the plaintiff, that Massachusetts has no jurisdiction on the high seas ; that the ships belonging to her ports are only known when they have left her ports as American, and not as Massachusetts vessels, and that, therefore, the laws of Massachusetts should not be regarded as operating upon them. As Massachusetts cannot be said to have any jurisdiction over them, they should not be held to be within the operation of her bankrupt or insolvent laws. Undoubtedly, no single state of this union has any jurisdiction, in this sense, beyond its territorial limits. It

is, indeed, in a very high and a very important sense sovereign and independent; it is, in short, a nation in relation to its domestic polity and laws, comprehending the widest and highest sphere of governmental action; it is not a nation in relation to foreign governments or for international purposes. If any crime was committed on board the vessel in question, while she was on the high seas, the perpetrators of it would be answerable to the laws of the United States, and not to those of Massachusetts; or if her officers committed any wrong affecting the vessels or other property of any foreign nation, or if they suffered any wrong affecting the vessels or other property of any foreign nation, or if they suffered any wrong from the authorities of a foreign nation, the government of the United States, and not of Massachusetts, would be the instrumentality by which satisfaction would be afforded in the one case, and redress demanded in the other.

Nevertheless, although for the more convenient and efficient administration of justice and for the purpose of all intercommunication and transactions with foreign governments, the vessel is properly called an American ship, she remains Massachusetts property, under the command and control of citizens of Massachusetts, and a portion of the general wealth of that state, subject to her laws. Strictly speaking, as property, she should be deemed more a portion of the wealth of the state than of the union, and as such property more subject to the jurisdiction and laws of the former than of the latter. Her officers and crew, indeed, are, as we have seen, subject, as to their conduct while on the high seas, to the criminal laws of the union; and the flag of the union betokens her national character. But this does not deprive Massachusetts of precisely the same control over her as property, which the laws of that state allowed and prescribed before she left the port from which she took her departure on her voyage to the Pacific ocean.

Perhaps, however, these observations and this course of inquiry have little or no relevance in aiding a correct conclu-

Kelly *v.* Crapo.

sion on this occasion. After all, this is a mere question of comity between sovereign states. We are under no obligation to recognize the transference *in invitum* of any property made under the laws of other jurisdictions. We could, if we thought proper, disregard all such assignments, and resolve that they should have no efficacy in this state, whether the property was or was not situated within the territory, or under the control or jurisdiction of the state or nation in which the assignment was made. But we have chosen, thus far, to give a preference to the claims of creditors of the bankrupt or insolvent, who are citizens of this state, in respect to property actually here. Is not this sufficient? Shall we extend this preference in respect to property not within our jurisdiction at the period of the assignment, because it was not actually within the territorial limits of the other state, although virtually under the dominion of her laws as property? Shall we take advantage of the mere fact that it happens to be beyond her territorial limits at that period, although not within our own, and thus, in a case presenting no substantial ground of distinction, refuse to recognize her jurisdiction? I do not think this would be generous, or courteous even, on our part. That comity which should exist, and be liberally practiced between all civilized nations, and more especially between sister states, forbids that we should go any further than we have already gone in cases of this description. The line of demarcation in relation to this subject should be between property actually within our limits at the time of the assignment, or insolvency, or bankruptcy, and property not actually within our limits. There is a good reason for sustaining the preference of creditors resident in our state in respect to property situated within its limits at the time of the assignment. Comity towards other sovereignties does not require of us to go so far as to deny or ignore such a preference; for it may, with considerable plausibility, be assumed that the credit was obtained in this state in consequence of the debtor's having property

here. At least, it may be assumed that this was some inducement to the person who gave the credit; at all events, there was nothing grasping, nothing inconsistent with comity in retaining the property of the debtor situated here at the time of the act of bankruptcy or insolvency, for the benefit of the creditors residing here. But, beyond this, I repeat, it would be both discourteous towards a sister state, and incompatible with our own dignity to give the preference any greater effect, and take advantage of the fact that a ship belonging to Massachusetts was prosecuting her voyage on distant seas, and insisting that she could not be deemed a Massachusetts ship, because, under the federal compact between Massachusetts and her sister states, she had not a Massachusetts, but an American flag on her mizzen yard.

Whatever Massachusetts may have done in respect to the insolvent laws of other states, her conduct is no reason why we should imitate her discourtesy or illiberality. In the administration of our laws, if we had only to do with Massachusetts, we may be justified in retaliating; but, as we have to adopt general rules, we must shape our course according to the broad dictates of comity and liberality towards all sister states alike.

In conformity with these considerations, I am of opinion that there should be a judgment dismissing the complaint with costs.

LEONARD P. J. The rule of law that transfers of property under foreign insolvent or bankrupt proceedings, are void as to domestic creditors, applies only to property within this state at the time of the transfer.

The property seized by the sheriff in this case was on the high seas at the time of the insolvent proceedings in Massachusetts. If the vessel first reached a port there, or in New Jersey, the principal referred to could not be applied, to maintain the plaintiffs' case. I am unable to perceive any reason for holding that the transfer was inoperative while the

Kelly *v.* Crapo.

vessel was not in any port. It would be an unreasonable extension of a severe rule of law to hold the transfer void or inoperative under such circumstances.

In the case of *Moore* v. *Willett, sheriff,* (35 *Barb.* 663,) Judge Ingraham referred to the fact that the vessel was on the high seas, as affording an additional reason for sustaining the title of an assignee, under a voluntary assignment for the benefit of creditors, made in North Carolina, containing provisions which were lawful there, but against the policy of the law as adjudged in the courts of New York. The fact referred to did not control the decision of that case, but the reason is fully applicable here, and ought, I think, to be controlling.

I concur in the opinion of Judge Clerke.

SUTHERLAND, J. I dissent. No doubt the statutory or involuntary bankrupt proceeding passed the title to the property, as between the bankrupt firm and the assignees; but I cannot see why the well settled principle, that the courts of this state will not recognize and give effect to such a proceeding as against New York creditors, ought not to control our decision of this case. No matter where the vessel was when the statutory assignment was made; she came here subsequently, and I think the New York creditor should have the benefit of the well settled principle referred to.

Judgment dismissing the complaint.

[New York General Term, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]